**Wendy MITCHELL, Plaintiff,**

v.

**Berkley M. MACKEY, IV, et al., Defendants.**

**No. 7:95–cv–134(WDO).**

United States District Court, M.D. Georgia, Valdosta Division.

Feb. 15, 1996.

Katherine Lee McArthur, W. Carl Reynolds, Macon, GA, for Wendy Mitchell.

Wade H. Coleman, Valdosta, GA, Frank Thomas Young, Valdosta, GA, for Berkley M. Mackey, IV, Berkley M. Mackey, III.

### ORDER

OWENS, District Judge.

Plaintiff filed this diversity action on November 16, 1995. Plaintiff alleged that she was a domiciliary of Florida and that both defendants were domiciled in Georgia for purposes of 28 U.S.C. § 1332. Defendant's answer challenged the diversity of the parties. The court advised the parties to first depose plaintiff, after which the court should be advised whether defendant would press its jurisdictional challenge. Defendant wrote the court that it did so intend after having deposed plaintiff, and plaintiff requested an immediate hearing. A hearing was convened at the federal courthouse in Macon, Georgia on February 14, 1996, to hear testimony and argument from both sides on the question of whether plaintiff was domiciled in Florida for diversity purposes.

The court heard testimony from plaintiff, Wendy Mitchell, and her father Gary Mitchell. Plaintiff's mother was also present, but did not testify since plaintiff's counsel said any such testimony would be cumulative. Defense counsel cross-examined both witnesses, but did not call any witnesses of his own.

Having heard and thoroughly considered all of the evidence in light of the law, the court issues the following opinion.

### I. FACTS

Wendy Mitchell lived with her parents in Macon, Georgia, until she began attending Valdosta State University as a full-time student. In February 1994, on the night of her 21st birthday, Wendy was walking with her boyfriend on the edge of North Williams Street in Valdosta, Georgia when the couple was hit by an automobile driven by defendant Berkley Mackey IV. Although neither Wendy nor her boyfriend were killed, Wendy sustained serious injuries (she was in a coma for eleven days after the accident) qualifying her for Social Security disability payments. Wendy's injuries continue to affect her daily lifestyle. For example, Wendy is incapable of driving on interstate highways because of double vision that she continues to experience, and should not drive at all at night; she also experiences bouts of forgetfulness and memory loss that require her to have roommates for safety reasons.

At the time of the accident, Wendy considered herself to be a permanent resident of the city in which her parents lived and owned a home—Macon, Georgia. However, before the complaint in this case was filed, Wendy's parents sold their Macon, Georgia home and moved all of their possessions—including all of Wendy's belongings, possessions, and "keepsakes"—to Panama City, Florida, where they lived on a sailboat owned by

them and docked in a marina at Panama City. Gary Mitchell, Wendy's father, testified that he and Wendy's mother had always considered such a move; the Mitchell family had always loved to scuba dive, had visited Panama City all of their lives for that purpose, and had almost always had a boat in Panama City for that purpose. When her parents moved to Panama City, Wendy said that she considered her permanent residence as having moved there as well. Valdosta, Wendy claimed, had always been a temporary residence for her while in school.

Before relocating permanently to Panama City, Wendy's parents purchased in April 1995 a new forty-three foot (43') sailboat on which to live. The boat is approximately fourteen feet (14') wide, has a toilet and shower, full kitchen facilities, and bedroom. Wendy's parents pay a monthly "slip" fee for the boat, as well as utilities. The boat is large enough to allow Wendy to live there with her parents if she so chooses and, in fact, Wendy does so intend upon graduation from college.

Because Wendy's injuries have prevented her from travelling alone since February 1994,[1] she has not visited her parents at their new home at the marina in Panama City, and has yet to see the new boat that her parents bought in April 1995. Wendy intends to live there with her parents this summer, and to move there permanently once she graduates from college. All of Wendy's mail for which a "permanent address" is required (such as her grades, her Social Security disability check, her monthly banking statement, and her credit card bills) is sent to the boat. All of her personal belongings other than those which she took with her off to school are located in Panama City, either on the boat or in storage.

Wendy, although not legally a minor, is still completely dependent upon her parents for support. Her parents pay for her tuition, living expenses, car, and insurance. Wendy concluded by saying that she considered herself a Florida resident because, in a nutshell, home was where her parents lived.

Gary Mitchell also testified concerning the move to Panama City by him and his wife. Mr. Mitchell stated that it was his and Mrs. Mitchell's intention to relocate to Panama City prior to Wendy's injuries, and that it is their intention to remain there now. Mr. Mitchell is registered to vote in Florida, has a Florida driver's license, has Florida tags on his car, and considers himself to be a Florida resident.

Mr. Mitchell is in the costume jewelry business, and travels throughout Georgia, Florida, and South Carolina plying his wares to pharmacies and gift shops.[2] All stock and property owned by Mr. Mitchell in connection with his business has been relocated to Panama City and is warehoused there. Although he still owns a warehouse in Macon, it is to be sold this month. The family home in Macon, Georgia sold in October 1995, and Mr. Mitchell stated that his family has no other house or home in this state.

## II. LAW

Congress has granted this court the jurisdiction to hear civil action between citizens of different states where the matter in controversy exceeds the sum or value of $50,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1). Because the existence of federal jurisdiction is dependent upon the facts as they exist when the complaint is filed, *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), the proper focus for determining "diversity" is the parties' citizen-

---

1. When Wendy has come to Macon to visit her boyfriend, who attends graduate school at Mercer and who was injured in the accident with her, she has done so only upon arranging rides with friends.

   Because of the short notice with which this hearing was convened, Wendy had to make arrangements for a friend to take her as far north as Cordele, Georgia, where her boyfriend picked her up.

2. Coverage of this territory requires Mr. Mitchell to be away from home three to four days a week, and Mrs. Mitchell usually accompanies him. Mr. Mitchell testified, however, that Mrs. Mitchell would not accompany him once Wendy moved to Panama City, since Wendy needed someone to be at home with her.

ship when suit is commenced. *Maryland Cas. Co. v. W.R. Grace and Co.*, 23 F.3d 617, 622 (2d Cir.1993). The party seeking to invoke federal diversity jurisdiction bears the burden of establishing diversity by a preponderance of the evidence. *Sheehan v. Gustafson*, 967 F.2d 1214 (8th Cir.1992).

■ "Citizenship" and "domicile" are synonymous for purposes of diversity jurisdiction. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir.1991). Residence, however, is not the equivalent of either citizenship or domicile. *America's Best Inns v. Best Inns of Abilene*, 980 F.2d 1072, 1074 (7th Cir.1992). Generally, a person's domicile is the place of "his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom...." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974).

■ This general definition of domicile has varying applications, however, according to the particular individual to whom it is applied. Adults, for example, are deemed to establish domicile "by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Choctaw Indian Band v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). However, the domicile of minors is usually determined by reference to another person, since minors are considered incapable of forming the requisite intent to establish independent domicile. *Safeco Ins. Co. v. Mirczak*, 662 F.Supp. 1155, 1157 (D.Nev.1987). Students attending college are also treated differently by the courts for purposes of diversity. "Since out-of-state students are often located in the state only for the duration of and for the purpose of their studies, they are generally presumed to lack the intention to remain in the state indefinitely." *Murphy v. Newport Waterfront Landing, Inc.*, 806 F.Supp. 322, 324 (D.R.I.1992) (internal quotations marks omitted); 13B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE 2D § 3619 (1984 & Supp. 1995). With respect to the cases dealing with students attending school out-of-state,

the determinative factor is "whether the parents continued in their parental roles to support and control the minor child." *Mulholland v. AAA Food Svc., Inc.*, No. 89–3492, 1990 WL 223012, at *3, 1990 U.S.App. LEXIS 22524, at *7 (7th Cir. Dec. 13, 1990).

### III.  DISCUSSION

■ In the spirit of the rules formulated by the courts for determining domicile, the court finds that Wendy Mitchell was a Florida domiciliary at the time this action was filed. Wendy's intent to remain indefinitely in Georgia disappeared as soon as her parents relocated to Florida. In challenging diversity, defendant is in a catch–22: on the one hand, he maintains that Georgia is Wendy's domicile because that is where her parents were; yet on the other he contends that Florida is not her domicile even though that is where her parents now permanently live.

The court finds as fact that Wendy intended to make Florida her new home and domicile as soon as she learned that her parents were permanently relocating there. When her parents made this decision, Wendy understood that she was incapable of living by herself, and needed assistance from someone living with her. With this in mind, she formed the intent to return to Florida, where her parents were, upon graduation. Wendy's parents expressed their desire for Wendy to so return, and showed that they have ample facilities on their boat to accommodate Wendy. And although Wendy is not technically a minor, she nevertheless is entirely dependent upon her parents for tuition, living expenses, transportation, and insurance.

The court finds that the law does not impose a formal requirement that Wendy "set foot" on the boat, or perform any other needless formality to "establish a physical presence" in Florida. As is often stated, home is where the heart is. Under the circumstances of this case, where the injuries for which plaintiff is suing prevented her from establishing such a physical presence, Wendy could consider the boat in Panama City as her domicile for the sole reason that her mother and father lived there, and that when

able, she would return there to live with them.

### IV. CONCLUSION

Although factually unique, the court's task is not difficult. Ample evidence supports a finding that Wendy's intent was to consider her home (domicile) to be where her mother and father were. Further, there was ample evidence with respect to Wendy's intent after graduation. In the court's best judgment, Wendy's testimony was credible, believable, and more than sufficient to find that she is a Florida domiciliary.

Accordingly, **THE COURT FINDS THAT IT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE PURSUANT TO 28 U.S.C. § 1332(a)(1).**

SO ORDERED.