**Freddie HAMILTON, Administratrix, et al., Plaintiffs,**

**v.**

**ACCU–TEK, et al., Defendants.**

**No. 95 CV 0049(JBW).**

United States District Court,
E.D. New York.

July 13, 1998.

Elisa Barnes, New York City, for plaintiffs.

John F. Renzulli, Renzulli, Gainey & Rutherford, New York City, for defendants Accutek, A.M.T.; Browning Arms Co.; Davis Industries, Inc.; European American Armory; Freedom Arms Co.; Glock Inc.; H & R 1871 Inc.; K.B.I. Inc.; Mitchell Arms; Navegar (d/b/a Intratec); Olympic Arms; Para–Ordnance Mfg.; Springfield Inc.; Thompson/Center Arms.

Robert L. Joyce, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendants Sigarms, Inc.

Anne Giddings Kimball, James P. Dorr, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendants Colt Manufacturing Co., Inc.; Smith and Wesson Corp.; Sturm, Ruger & Company, Inc.

Daniel T. Hughes, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, New York City, for defendant American Arms.

Peter Johnson, Leahey & Johnson, New York City, for defendants Century International Arms.

Timothy A. Bumann, Cozen and O'Connor, Atlanta, GA, for defendants American Derringer Corp.; Bryco Arms; Calico Weapon Systems, Inc.; Excam Inc.; Firearms Import and Export Corp.; Jennings Firearms Inc.; Lorcin Engineering; Phoenix Arms, Inc.; Taurus International Firearms Inc.; Sundance Industries.

Lawrence G. Keane, Pino & Associates, White Plains, New York City, for defendant Beretta U.S.A. Corp.

Timothy Atwood, Ansonia, CT, for defendants Charco Charter Arms; L.W. Seecamp Co., Inc.; International Armament Corp. (d/b/a/ Interarms).

David Gross, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Short Hills, NJ, for defendants AcuSport Corp.; Alamo Leather Godds, Inc.; Banger, L.P.; Brazas Sporting Arms, Inc.; Chattanooga Shooting Supplies, Inc.; Davidson Supply Co., Inc.; Eagle Exim, Inc.; Fox Wholesale, Inc.; Graf & Sons; Gunarama Wholesale, Inc.; Hill Country Wholesale, Inc.; Lipsey's, Inc.; Kiesler Police Supply; Micro Sight Company; Nationwide Sports Distributors; Point Sporting Goods; RSR Wholesale South, Inc.; Schaub Distributors; Scott Wholesale Co., Inc.; SG Distributing/Andrews Sporting Goods; Southern Ohio Gun Distributors, Inc.; Sports South, Inc.

E. Gordon Haesloop, Bartlett, McDonough, Bastone & Monoghan, Mineola, NY, for defendant Ellett Bros., Inc.

Luigi Spadafora, Winget & Spadafora, New York City.

*MEMORANDUM and ORDER*

WEINSTEIN, District Judge.

I. Introduction

Whether this court has diversity jurisdiction over a mother's suit against gun manu-

facturers for her son's death by gunshot depends upon whether her son changed his domicile from his mother's in New York to his own in Virginia.

By birth, children are forever tied to their parents. *See, e.g., Eph.* 6:3 (Revised Standard Version) ("Honor your mother and father that it may be well with you and that you may live long on the earth."). Financial, legal, and other ties do, however, lessen with time. Here, as the facts demonstrate, the filial domiciliary bonds still remain joined in New York, providing diversity jurisdiction over a Virginia corporation.

## II. Procedure

Various gun manufacturers move, pursuant to Federal Rules of Civil Procedure 12(b)(1), to dismiss the claim of plaintiff Veronica Costa, mother of decedent Christopher Malachi, for lack of subject matter jurisdiction. Mrs. Costa, for purposes of this case, assumes the domicile of her deceased son, of whose estate she is executrix.

Defendants argue that Malachi was a domiciliary of Virginia at the time of his death. It is undisputed that at least one defendant was a corporate citizen of Virginia. If defendants' contention is correct, subject matter jurisdiction with respect to Mrs. Costa, based on complete diversity, is lacking. 28 U.S.C. § 1332(a). The evidence belies their contention.

## III. Facts

Decedent, Christopher Malachi, was born on February 5, 1971 in New York City. There he attended nursery through high school. In the spring of 1990, he matriculated at Norfolk State University in Norfolk, Virginia. He was charged tuition as an out-of-state resident, which is higher than that for Virginia residents. His mother paid his tuition and rent and sent him spending money regularly from New York. According to his college transcript, he attended through the fall of 1992. His mother was aware that he had taken some time off from college, but it was her understanding that he had re-enrolled or would shortly do so.

Malachi was shot to death on April 19, 1994 at the age of 23. His mother brought suit against the defendant gun manufacturers and distributors.

In the approximately one to two years before his death, Malachi was residing in the state of Virginia while working as a house painter. His mother testified that, though his earnings were good, he had told her that he intended to finish college and become an architectural drafter.

The mother testified that Malachi expressed the intent to return to New York City with his fiancé, Tamara Rooney. Rooney resided in Maryland. Malachi spent some holidays with her and her family in Maryland, and he spent some holidays in New York with his family. His mother stated that he came home for the summers. He and his fiancé had been looking at apartments in New York City—obviously for their future joint use. Mrs. Costa noted that her son had never expressed to her an intention to either remain in Virginia or move to any state other than New York.

While Malachi had not filed tax returns in Virginia, he had obtained a driver's license and identification card from the Virginia Department of Motor Vehicles. On the identification card application, he indicated that he was a resident of Virginia. On the purchase and registration statements for a car that he purchased while in Virginia, he declared that his home address was in Virginia.

A fellow student at Norfolk had alleged that Malachi had impregnated her. Malachi denied the allegation. He had no subsequent contact with the woman nor the baby that she bore. Malachi's mother did maintain contact with the child, who is living in Virginia with her maternal grandmother. The child's mother left Virginia after giving birth.

There is some familial connection of Mrs. Costa and Malachi to Virginia. Malachi's uncle, Mrs. Costa's brother, lived in Virginia at the time of Malachi's death, though there was no evidence that the uncle had a close relationship with his nephew. While Malachi indicated on automobile loan forms that one Darren Gomez was a cousin who lived in Virginia, Mrs. Costa testified that she had no

knowledge of such a person. Malachi also listed Eric Morris as a cousin residing in Virginia Beach, Virginia, but Mrs. Costa testified that Morris had never lived in Virginia. The rest of Malachi's family lived outside of Virginia.

At the hearing on the diversity issue, only the mother testified. Defendants relied upon documents such as Malachi's Virginia personal identification card application. The mother was completely credible, though her belief that her son did not intend to reside permanently in Virginia is not conclusive. Her testimony was only circumstantial evidence of the critical fact, his mental state.

IV. Law

■ Diversity for purposes of original subject matter jurisdiction (28 U.S.C. § 1332) must be "complete." *See Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 460 (2d Cir.1998). No plaintiff can be a citizen of the same state as any of the defendants. *See Cushing v. Moore,* 970 F.2d 1103, 1106 (2d Cir.1992). For purposes of diversity, state citizenship has two components: (1) citizenship in the United States and (2) domicile in a state. *See Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.1974). The first is not contested.

■ Domicile is established by "residence in fact, coupled with the intent to make the place of residence one's home." *Texas. v. Florida,* 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817 (1939). Though a person can have more than one residence at a time, he or she cannot simultaneously have more than one domicile. *See* Restatement (Second) of Conflict of Laws § 11 (1988); *see also* Restatement (Second) of Conflict of Laws § 11(1) cmt. a (1988).

■ A party changes domicile when taking up residence in a new place with the intention of remaining there. *See Gutierrez v. Fox,* 141 F.3d 425, 428 (2d Cir.1998); *Hakkila v. Consolidated Edison Co.,* 745 F.Supp. 988, 990 (S.D.N.Y.1990) (enrollment in New York college and registration to vote in New York insufficient to show intent to remain in New York). Even when residence is physically changed, the law assumes that the old domicile continues until there is an intent to create a new one. *See Gutierrez v. Fox,* 141 F.3d 425, 428 (2d Cir.1998) (trial residence with girlfriend in New York not sufficient for change from domicile with parent living in New Jersey); *Hakkila v. Consolidated Edison Co.,* 745 F.Supp. 988, 990 (S.D.N.Y.1990).

■ A college student retains the domicile of his parents when he goes off to college, absent a showing of the child's change of domicile. *See, e.g., Scoggins v. Pollock,* 727 F.2d 1025, 1028 (11th Cir.1984) (even though plaintiff did not intend to return to Georgia, her previous domicile, after she moved to South Carolina to pursue graduate studies, she was "undecided about her future plans" and therefore continued her Georgia domicile); *Mas v. Perry,* 489 F.2d 1396, (5th Cir.1974) (graduate student's presence in Louisiana was only as a student without the requisite intention of remaining there); *Hakkila v. Consolidated Edison Co.,* 745 F.Supp. 988 (S.D.N.Y.1990) (no intent to change domicile to state where student attended college).

■ Proving a college student's intent may be difficult. In analyzing the evidence, the court begins with the assumption that an out-of-state college student lacks the intention to remain as a scholar indefinitely, away from his or her permanent home. *See Shishko v. State Farm Ins.,* 553 F.Supp. 308, 310 (E.D.Pa.1982), *aff'd* 722 F.2d 734 (3d Cir. 1983).

■ The party charging that a domicile has been changed has the burden of proof on the issue. *See Gutierrez v. Fox,* 141 F.3d 425, 428 (2d Cir.1998). Determination of intent is a factual question for the court. *See Krasnov v. Dinan,* 465 F.2d 1298, 1300 (3d Cir.1972) (clearly erroneous standard of review).

■ Weighing conflicting "objective indicia of intent" in the light of all the evidence is required. *Bair v. Peck,* 738 F.Supp. 1354, 1356 (D.Kan.1990); *see Estate of Murray v. Prudential Securities Inc.,* 1993 WL 408333, *5 (D.Kan.1993). Factors that courts have looked to in determining a student's intent to change domicile include the issuing state of the student's driver's license, current

residence, voter registration, past voting venues, location of bank accounts and personal property, membership in churches and other organizations, tax payments, and automobile registration. *See, e.g., Estate of Murray v. Prudential Securities Inc.*, 1993 WL 408333, *5 (D.Kan.1993); *Murphy v. Newport Waterfront Landing, Inc.*, 806 F.Supp. 322, 324 (D.R.I.1992); *Naglak v. Berlin*, 1989 WL 114356, *2 (E.D.Pa.1989). While much case law has focused on driver's licenses and other tangible indications of residence, such factors are not decisive in determining intent. *See, e.g., Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir.1972). For example, continuing aid and support given to a student by parents bolster the assumption against a change in domicile. *See, e.g., Mitchell v. Mackey*, 915 F.Supp. 388, 391 (M.D.Ga.1996).

▮ Declarations of intent by the person whose domicile is in question are given heavy, but not conclusive, weight. *See, e.g., Lyons v. Salve Regina College*, 422 F.Supp. 1354, 1357 (D.R.I.1976), *rev'd on other grounds* 565 F.2d 200, 203 (1977); *see also* Charles A. Wright, The Law of Federal Courts § 26, at 87 (2d ed.1970) (the factfinder can look to, among other things, the declarations of intent of the party whose domicile is in question); *accord Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir.1972) (quoting Wright). *But cf. Campbell v. Oliva*, 295 F.Supp. 616, 618 (E.D.Tenn.1968) (expressed intention regarding domicile would be given consideration but may frequently lack persuasiveness due to self-serving motivations).

## V. Application of Law to Facts

▮ Defendants have marshaled strong evidence of a change of domicile to Virginia. Malachi had a Virginia driver's license, a Virginia car registration, and an apartment in Virginia. He listed Virginia as his residence for some purposes, and he worked in Virginia. A document showed that Malachi was not registered to vote in New York at the time of his death. It is unclear whether he affirmatively canceled his voter registration or whether it lapsed. *See* N.Y. Elec. Law § 5–406 (McKinney 1978) (subsequently repealed effective Jan. 1, 1995); N.Y. Elec. Law § 5–400 (McKinney Supp.1997) (new voter registration cancellation legislation). There is no evidence of a vote in Virginia.

Evidence of a failure to change domicile was also strong. His mother testified that his expressed intention was not to stay in Virginia but to come back to New York. She testified—truthfully, the court concludes—that he came back to New York City with his fiancé to look at apartments to be occupied after their marriage, that he returned home for vacations and summers, that he left some of his personal property at her house in New York, and that he never indicated that he did not intend to return to New York.

There is, of course, a possibility, that Malachi was merely being kind to his mother and that he never intended to return with a wife to live near the parental home. In view of the evidence and the court's observations of the mother's straightforward and honest presentation as a witness, however, it seems unlikely that her son would have felt it necessary to mislead her. Malachi's station in life, his goals, and his actions support his mother's testimony about her son and confirm his likely intent to retain his New York domicile. *See, e.g., Scoggins v. Pollock*, 727 F.2d 1025, 1026–28 (11th Cir.1984); *Chase v. Annett*, 1986 WL 11714, *2 (E.D.Pa.1986) (consider the "totality of the circumstances"). It is conceivable, as defendants contend, that Malachi no longer intended to be a student. Yet it is more likely, based on the evidence, that he was a student temporarily taking time off from school to "find himself," as do many college students. Malachi was a struggling pupil, but he seemed to be committed to getting the education necessary to become an architectural drafter. That he was working during school and also while not enrolled is not determinative. *See Hakkila v. Consolidated Edison Co.*, 745 F.Supp. 988, 990–91 (S.D.N.Y.1990) (student's "jobs during college evidence a student's desire to earn money to help fund the expenses of her education" as opposed to a desire to establish a permanent life in the college area).

The fact that a young man was spending his money on a car purchased in Virginia and enjoying other activities there does not compel the conclusion that he did not intend to move on. His fiancé was not from Virginia,

and they came together to New York to seek an apartment in which to live. This is a weighty factor in deciding that Malachi did not expect to give up his New York domicile. The probability is that Malachi intended to move back to the Big Apple.

## VI. Conclusion

Malachi intended to return to New York to establish his own household. He never intended to change his domicile to Virginia. His domicile at the time of his death was New York. Since no defendant is domiciled in New York, the motion to dismiss for lack of diversity is denied.

SO ORDERED.