**Brian THOMAS, as personal representative of the estate of Ed Thomas, et al.,**

v.

**Sirron FARMER, et al.**

**No. CIV JFM–01–977.**

United States District Court, D. Maryland.

June 13, 2001.

Mr. Hammond agreed with this point at oral argument.

Ira Sherman, Allan Marshall Siegel, Chaikin & Sherman, P.C., Washington, DC, for Plaintiff.

George M. Church, Church & Houff, P.A., Baltimore, MD, Michael M. Hicks, Jean-Marie Sylla, Jr., Gilberg & Kiernan, Washington, DC, Vincent J. Palmiotto, Baltimore, MD, for Defendants.

---

## MEMORANDUM OPINION

MOTZ, Chief Judge.

In the early hours of January 1, 2000, Sirron Farmer's rental car struck a parked car on the shoulder of Interstate 95, killing its occupants, Ed Thomas, 35, and his seven-year-old daughter, Olivia Thomas, who had been waiting for help after a breakdown. A test performed on Farmer's blood shortly thereafter indicated a blood alcohol level of .247, and Farmer eventually pled guilty in state court to two counts of negligent manslaughter. Brian Thomas, Ed Thomas's brother and executor of his estate, and Una Gaskin, Ed Thomas's mother, sued Farmer, Alamo Rent-A-Car, Inc., and Alamo Financing, L.P., in the Circuit Court of Maryland for Baltimore City. The corporate defendants [collectively "Alamo"], with Farmer's consent, removed the case to this Court, and the plaintiffs now move to remand it. The only disputed issue is Farmer's domicile.

I.

Farmer was born in 1964, and raised in California, where his mother, his sister, his three children, and their mothers now live. From early childhood until he arrived in Maryland early in 1998, Farmer lived in California continuously except for two periods. In 1994–95 and in 1997, he lived in Queens, New York, with his grandmother and aunt.

In January 1998, Farmer moved to Baltimore, and began full-time study at Morgan State University. He lived on campus from January to May 1998, and spent summer 1998 in New York. For the 1998–99 academic year at Morgan, he lived in and paid rent on an apartment on Franconia Drive in Baltimore. He spent summer 1999 in Baltimore, continuing to live on Franconia Drive. In fall 1999, Farmer moved out of the Franconia Drive apartment, and did not attend classes at Morgan. As of November 1999, he worked part-time jobs at United Parcel Service and at U–Haul for a total of sixty to seventy hours a week. He lived with a friend in Baltimore for two months, with another friend in Baltimore for about a month, and then in November 1999 rented an apartment in Baltimore. He had planned, before the accident, to fly to Sacramento on January 1, 2000, to visit family, and then to return to Maryland to re-enroll in classes at Morgan later in January. He planned to continue working in Baltimore as well, and had applied for a job at Wonder Bread on the day before the accident.

In early 2000, Farmer owned a car that was registered in Maryland and was not insured. He had one bank account in Maryland and another in California. He had always paid out-of-state tuition at Morgan, and had taken no steps to be permitted to pay in-state tuition. He possessed a New York driver's license, obtained after his

California license was suspended. The record is silent as to whether or where he was registered to vote, whether or where he paid taxes, and his financial dependence on his family, including who paid his tuition and living expenses when he was enrolled at Morgan. Nothing in the record says whether he kept personal property outside Maryland.

Farmer's statements of intent, for purposes of this litigation, say that he never intended to remain permanently in Maryland. He says that studying at Morgan was the only reason he was in Maryland. Opp'n Ex. 2 at 134–35. He gives an address in Queens, New York, as his "permanent address." Mot. Ex. 3 at 1.

## II.

 The only disputed issue is whether Sirron Farmer was domiciled in Maryland or not when this case was filed.[1] The defendants, as the party seeking federal jurisdiction, have the burden to establish by a preponderance of the evidence that he was not. *O'Brien v. Jansen,* 903 F.Supp. 903, 904 (D.Md.1995) (citations omitted). They have the benefit of a presumption against a change of domicile: a "party's preexisting domicile is presumed to continue unless and until it appears that (1) he was physically present in another state and (2) he intended to remain there indefinitely." 903 F.Supp. at 904. Farmer has been physically present in Maryland since August 1998 without a break, and from January to May 1998 as well. The question is whether he intended to remain in Maryland indefinitely.

 As a preliminary matter, I note that the record shows little to support the argument that Farmer was ever domiciled in New York. He apparently lived there with relatives for less than a year before starting at Morgan. He can show no bank account, car registration, voting record, or payment of taxes in New York, and his decision to obtain a driver's license there is colored by the prior suspension of his California license. There is no evidence that he ever had a New York bank account, and in any event when he did choose to maintain an out-of-state bank account during his residence in Maryland, he kept one in California, not New York. Of course, if Farmer was not domiciled in New York before moving to Maryland, his present stated intent to live in New York after graduating does not establish domicile there.[2]

 If Farmer's prior domicile was New York, the question is whether he changed his domicile to Maryland. Among the relevant "[f]actors that courts have looked to in determining a student's intent to change domicile [are] the issuing state of the student's driver's license, current residence, ... location of bank accounts and personal property, membership in churches and other organizations, tax payments, ... automobile registration, .... [and] continuing aid and support given to a student by parents."[3] *Hamilton v. Accu–*

1. Although the pleadings discuss Farmer's citizenship, the relevant legal question for purposes of diversity jurisdiction, given his United States citizenship, is his domicile. 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3611 (2d ed. 1984 & 2001 Supp.).

2. It does, however, defeat any argument that Farmer continues to be domiciled in California. Such an argument would be based on the presumption that he intends to return "home" after graduating from college, *see infra,* and is defeated by his own contrary statement.

3. Farmer's present incarceration in Maryland does not affect his domicile. 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3618 (2d ed. 1984 & 2001 Supp.). The record is unclear as to how long he paid rent

*Tek,* 13 F.Supp.2d 366, 369–70 (E.D.N.Y. 1998). Domicile in Maryland is supported by Farmer's residence there, his decision to remain in Maryland while he was working full time from spring 1999 through January 2000, a bank account, the registration of his car, and the location of his personal property. Domicile in New York is supported only by Farmer's statement of intent, his payment of out-of-state tuition at Morgan, and his driver's license. Given that his California license had been suspended, his acquisition of a New York license and decision not to apply for a Maryland license does not suggest perfect voluntary choice among states. As I have said, Farmer did not even maintain a bank account in New York, although he kept one in Maryland and in California. Although Farmer does declare his intent to live in New York after leaving Maryland, "declarations of intent by the person whose domicile is in question are given heavy, but not conclusive, weight." 13 F.Supp.2d at 370 (finding domicile against contrary testimony by the person in question). The weight of the indicia of domicile is against New York.

The presumption that an out-of-state student's prior domicile outside of Maryland continues when he arrives here could theoretically help the defendants, but it is weak at best in Farmer's case. *Cf.* 903 F.Supp. at 904. In fact, the presumption seems not to apply at all. It is rooted in the assumption that an out-of-state student retains the domicile of his or her parents, and intends to return to their state after graduating.[4] 903 F.Supp. at 904. At the time of the accident, however, Farmer was a thirty-five-year-old father of three, not a young person starting out in life. Even more damaging to the presumption, he himself claims to be domiciled thousands of miles from the residence of his mother and, for that matter, of his three young children. Moreover, Farmer spent the most recent vacation from his university education, summer 1999, in Maryland, and when he broke off his university education for an extended period, he remained in Maryland and worked full time here. He has been a resident of Maryland continuously since August 1998. 903 F.Supp. at 904. Other factors that could buttress the presumption, such as Farmer's relative dependence on his parent, are missing from the record. *See* 903 F.Supp. at 904 n. 2.

The best that can be said for defendants' argument, as in other tangled domicile cases, is that "the evidence here is very much in equipoise." 903 F.Supp. at 905. I find that the defendants have failed to establish that Farmer is domiciled outside Maryland by a preponderance of the evidence.

For the foregoing reasons, the motion to remand will be granted.

on his Baltimore apartment after being incarcerated, but a few months' rent paid after incarceration does not establish intent to be domiciled in Maryland.

4. Of course, parenthood per se is not required; the presumption could certainly ap-

ply to another family member or a non-relative who had acted as a parent. Nothing in the record suggests, however, that either Farmer's grandmother or his aunt in New York stood as a parent to him during his upbringing.