The decision of the Bankruptcy Appellate Panel is affirmed.

**Domingo GUTIERREZ, Plaintiff–Appellee,**

v.

**Bernard FOX, Defendant–Appellant.**

**Docket No. 97–7807.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1998.

Decided April 13, 1998.

Jeffrey A. Block, New York City (Thomas P. Kinney, Block & Associates, New York City, of counsel), for Plaintiff–Appellee.

Stuart D. Schwartz, New York City (Hugh J. Helfenstein, David L. Kremen, Oshman & Helfenstein, New York City, of counsel), for Defendant–Appellant.

\* The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New

Before: VAN GRAAFEILAND, WALKER, Circuit Judges, and RAKOFF, District Judge.\*

VAN GRAAFEILAND, Circuit Judge.

Bernard Fox appeals from an order of the United States District Court for the Southern District of New York, Scheindlin, *J.*, dismissing the above entitled action for lack of diversity jurisdiction after the jury had returned a verdict against him in the amount of $65,000. For the reasons that follow, we hold that this somewhat unusual appeal has merit.

On October 1, 1995, Domingo Gutierrez, a 27–year–old, long-time New Jersey resident, was injured when his automobile collided with an automobile owned and operated by Fox, a New York resident, in the City of New York. On October 5, 1995, Gutierrez retained attorney Jeffrey Block's law firm to represent him. On July 18, 1996, Block instituted this action by preparing, signing, and filing a complaint in the Southern District.

 The most important allegation in the complaint was the statement of jurisdiction—the so-called "threshold" allegation. *See Tcherepnin v. Knight,* 389 U.S. 332, 346, 88 S.Ct. 548, 558, 19 L.Ed.2d 564 (1967); *Londoff Bowling Lanes, Inc. v. Landmark North County Bank & Trust Co.,* 516 F.Supp. 17, 18 (E.D.Mo.1981). The district court could not address the merits of plaintiff's claim without first determining that it had jurisdiction. *See Lingle v. Norge Div. of Magic Chef, Inc.,* 823 F.2d 1031, 1037 (7th Cir.1987), *rev'd on other grounds,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Without jurisdiction, any decision or ruling by the court would be a nullity. *See Naum v. Brown,* 604 F.Supp. 1186, 1187 (E.D.N.Y. 1985). Accordingly, before signing and filing the complaint, Block should have determined "at a minimum" whether the district court had jurisdiction. *Hussey Copper, Ltd. v. Oxford Financial Group,* 121 F.R.D. 252, 254 (W.D.Pa.1987).

York, sitting by designation.

■ Federal Rule 11 of Civil Procedure "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985). If an attorney alleges jurisdiction when reasonable inquiry would show that it did not exist, he may be held liable for sanctions substantial in amount. *See International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 (2d Cir.1989); *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986); *Weisman v. Rivlin,* 598 F.Supp. 724, 726 (D.D.C.1984).

We assume that Jeffrey Block, an experienced lawyer, was familiar with Rule 11 and the penalties to which he, and perhaps his client as well, would be exposed if he did not follow the Rule's dictates. We also assume that Block, as Gutierrez's legal spokesman, was better qualified than anyone else to speak with authority concerning Gutierrez's domiciliary status at the time the action was brought. We find nothing in the record that might be deemed to have influenced Block to make an improper statement of domicile. New York State courts were as available as were the federal courts. In short, we conclude that Block's allegation of jurisdiction based upon reasonable inquiry is a strong factor in favor of a similar judicial finding.

A review of the trial record discloses that on March 5, 1997, nine months after the lawsuit was brought and one day before the case went to the jury, Attorney Block, in response to the district court's sua sponte inquiry concerning jurisdiction, was as adamant as he was when he subscribed to the complaint. Speaking to the judge, he said:

MR. BLOCK: Your Honor, if I may, Mr. Gutierrez was a resident of the state of New Jersey. He resided at three different addresses in New Jersey with his mother.

THE COURT: Right, including at the time the suit was brought.

MR. BLOCK: Absolutely. His common-law wife, as he calls her, resided on Stanton Street.

THE COURT: I understand. What was the point in time where he said he spent 200 days a year?

MR. BLOCK: That was the year of the deposition, which at that point in time he testified he had spent about 200 days a year. But his home, his residence, was the state of New Jersey. It is only just now that he said he moved in to live with her regularly.

■ Another factor that militates in favor of Gutierrez's New Jersey domicile is the century-old presumption that a long-time domicile in a particular jurisdiction is presumed to continue. *See, e.g., Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584 (1874) ("A domicil once acquired is presumed to continue until it is shown to have been changed."); *Desmare v. United States,* 93 U.S. (3 Otto.) 605, 23 L.Ed. 959 (1876); *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 243 (2d Cir.1984); *Stine v. Moore,* 213 F.2d 446, 447 (5th Cir.1954).[1]

■ As a corollary to this presumption, the person alleging a change of domicile has the burden of proving it. *See Desmare,* 93 U.S. (3 Otto.) at 610 ("Where a change of domicil is alleged, the burden of proof rests

1. The district court apparently viewed this presumption as merely evidentiary in nature, placing on the party asserting a change in domicile a burden simply of coming forward with some evidence of that change. *Cf.* Fed.R.Evid. 301. While there is some support for this view, *see Coury v. Prot,* 85 F.3d 244, 250 (5th Cir.1996); *Bank One, Texas, N.A. v. Montle,* 964 F.2d 48, 50 (1st Cir.1992); *Lew v. Moss,* 797 F.2d 747, 751 (9th Cir.1986), it misconceives the purpose of this hallowed presumption, which, unlike evidentiary presumptions, is premised not on probabilities or on which party has more ready access to pertinent information, *see, e.g., GTS Industries S.A. v. S/S "Havtjeld",* 68 F.3d 1531, 1537 (2d Cir.1995), but rather on a judicial policy determination that in ascertaining diversity jurisdiction in a highly mobile society there is a need to fix domicile with some reasonable certainty at the threshold of litigation. This substantive policy, by which federal courts are able to ascertain their diversity jurisdiction without repeated disruption and waste of judicial resources, would be undermined if domicile had to be re-proven every time a party who had once invoked such jurisdiction came forward with any evidence of a change. Indeed, such a flimsy presumption would invite precisely the risk of undoing valid verdicts at the whim of disappointed litigants that the instant case presents.

upon the party making the allegation."). To satisfy this burden, two things are indispensable:

> First, residence in a new domicil; and, second, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change.

*Sun Printing & Publishing Ass'n v. Edwards*, 194 U.S. 377, 383, 24 S.Ct. 696, 698, 48 L.Ed. 1027 (1904) (citing *Mitchell, supra*); *Desmare, supra; Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir.1968); *Kubin v. Miller*, 801 F.Supp. 1101, 1110–11 (S.D.N.Y.1992); *Boston Safe Deposit and Trust Co. v. Morse*, 779 F.Supp. 347, 349 (S.D.N.Y.1991).

The American Law Institute, summing up the foregoing holdings in section 19 of its *Restatement (Second) of Conflict of Laws*, states that "[a] domicil once established continues until it is superseded by a new domicil." Comment (c) to this section provides further that "[t]he burden of proof is on the party who asserts that a change of domicil has taken place."

Instead of following the foregoing well-established rules of law, the district court was led astray by Gutierrez's testimony that he spent 200 days of the preceding year in New York City, the court disregarding in the process the remaining 165 days that were spent in New Jersey. The following colloquy between the court and counsel illustrates well the district court's misunderstanding of the law:

> MR. BLOCK: Judge, one more point. I'm sorry. In that light his testimony is also that one of the reasons he stayed in New York for that period of time was that he had someone to care for him there post-accident.
>
> THE COURT: It wouldn't make a bit of difference from a jurisdiction respect. If he is here, he is a resident of New York and there is no diversity.
>
> MR. BLOCK: But if he is a resident of New Jersey—
>
> THE COURT: The issue will simply turn on the 200 days at the time of the suit. It doesn't matter why he chose to do it.

In contradiction to the district court's apparent belief, "mere absence from a fixed home, however long continued, cannot work [a change in domicile]. There must be *animus* to change the prior domicile from another. Until the new one is acquired, the old one remains." *Welsh v. American Sur. Co. of New York*, 186 F.2d 16, 17 (5th Cir.1951) (citing *Mitchell*, 88 U.S. (21 Wall.) at 352). The district court clearly erred when it stated: "The issue will simply turn on the 200 days at the time of the suit. It doesn't matter why he chose to do it."

This error was exacerbated by the following statement in the district court's order dismissing the action:

> Based on the totality of the evidence, I have no substantial doubt that plaintiff changed his domicile to New York prior to the commencement of this lawsuit. The burden therefore shifts to defendant to prove that diversity in fact did exist between the parties.

No matter how we read this statement, we are unable to fit it into the rubric of the above cited authorities, which establish the basic principle that when a change in domicile is alleged, the burden of proof rests upon the party making the allegation. No one asserted a change of domicile in the instant case before the district court sua sponte raised the issue at the close of proof. Indeed, the district court criticized defense counsel for not having raised the issue sooner. Plaintiff's counsel, on the other hand, argued for New Jersey domicile from the time the complaint was filed until the jury returned its verdict, which plaintiff (or his attorney) thought was too low. Plaintiff's counsel then changed horses when he was far past the middle of the stream and argued for change of domicile.

The district court was, of course, duty bound to ascertain that it had jurisdiction. However, it also was duty bound to follow established principles of law; and, when it undertook to make factual findings, it was bound by the same presumptions as any other factfinder would be. Although Gutierrez worked in New York, banked in New

York, and had a girl friend who lived in New York with whom he stayed from time to time, it is undisputed that, as of October 1, 1995, he resided in New Jersey. As his counsel put it, the sole issue before the court was whether in the nine months between the time of the accident in October 1995 and the filing of the complaint in July 1996, Gutierrez changed his domicile to New York. Both the evidence and the established legal presumptions indicate that he did not.

When Gutierrez was asked on direct examination why there were 200 days in 1996 that he stayed at his girl friend's house, he explained that they were giving their relationship a trial period which ultimately led to a decision by Gutierrez to permanently move in with her in January 1997. He testified:

> We were getting ourselves you know better situated. You know before it was like we weren't, relationship wasn't working out so good. So now started getting a little better. That's actually why I spent more time in New York, and as of January the 1st I actually made my decision of everything, you know, we were going to stay living together.

He said the same thing on cross-examination:

> Q. Mr. Gutierrez, moments earlier you testified that you made a decision to stay with Ms. Baez, you said it was in January, correct?
>
> A. Yes.
>
> Q. Is that January this year?
>
> A. Yes, sir.
>
> Q. January of '97?
>
> A. I change all my documentations to.
>
> Q. To New York?
>
> A. Right, even the license and registration.
>
> Q. And that's because things had gotten better and it was now your intent to stay with her in New York, correct?
>
> A. Yes.

In response to interrogatories dated October 9, 1996, Gutierrez stated that he resided in New Jersey. In his oral deposition conducted on November 26, 1996, he testified that he did not reside with his girl friend in Manhattan; that he lived with his mother in New Jersey. His attorney believed him, and so did the defendant's. There was no reason for them not to do so. Gutierrez testified under oath that he did not form an intent to move his residence to New York until January 1997. The district judge cited proper authority for the proposition that, in order to change one's domicile, one must be present in the new domicile and have an intent to remain there indefinitely. However, she disregarded the fact that in 1996 Gutierrez spent 165 days in New Jersey and stated under oath that he did not decide to stay in New York until January 1, 1997. Her statement that "the issue will simply turn on the 200 days at the time of suit. It doesn't matter why he chose to do it" is wrong as a matter of both law and fact.

## CONCLUSION

We are convinced as a matter of fact and law that Gutierrez was domiciled in New Jersey when this action was commenced. Accordingly, we remand the case to the district court with instructions to enter a judgment in accordance with the jury's verdict.